IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

VERNON WILLIAMS,                    )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )  CIVIL ACTION NO. 09-00764-N
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social Security,   )
                                   )
        Defendant.                 )

ORDER

Plaintiff Vernon Williams filed this action seeking judicial review of a final

decision of the Commissioner of Social Security ("Commissioner") that he was not

entitled to disability insurance benefits ("DIB") under Title II of the Social Security Act

(the Act).  This action has been referred to the undersigned Magistrate Judge to conduct

all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c)

and Fed. R.Civ.P. 73 (doc. 14) and pursuant to the consent of the parties (doc. 13).

Plaintiff's unopposed motion to waive oral arguments (doc. 12) was granted on July 7.

2010 (doc. 15).  Upon consideration of the administrative record (Doc. 8) and the parties'

respective briefs (docs. 9 and 10), the undersigned concludes that the decision of the

Commissioner is due to be AFFIRMED.

I.  <u>Procedural History</u>.

Plaintiff filed an application  for  disability insurance benefits on April 11, 2007,

claiming an onset of disability as of February 6, 2007 (Tr. 104).  Plaintiff was 42 years

old at the time he filed his application (Tr. 104). His application was denied on May 14, 2007 (Tr. 61) and he requested a hearing (Tr. 68) before an Administrative Law Judge ("ALJ"). Following a hearing on March 5, 2009 (Tr. 27-60), the ALJ issued an unfavorable decision. The ALJ found that the plaintiff suffered from degenerative disc disease of the cervical and lumbar spine with neuropathy, but that plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the commissioner's listings. (Tr. 17) The ALJ further determined that plaintiff retained the residual functional capacity ("RFC") to perform less than the full range light work. The ALJ further found that plaintiff could perform other work that exists in the national economy and, therefore, was not disabled within the meaning of the Act (Tr. 17-22). Plaintiff requested a review by the Appeals Council (Tr. 10). Plaintiff's request for review was denied on September 23, 2009 (Tr. 1-4), thereby making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981 (2009). Plaintiff appeals from that decision and has exhausted all his administrative remedies.

II. <u>Issue on Appeal</u>.

Plaintiff's sole argument is that the ALJ improperly rejected his testimony regarding his pain and resulting limitations as not credible.

III. <u>Findings of Fact</u>.

A. <u>Medical History</u>.

On May 19, 1998, plaintiff was admitted to the hospital with a reported history of neck pain and underwent surgery by Dr. Troy Middleton for a ruptured cervical disc (Tr.

166).[1]  The medical records proffered with respect to this hospital admission and surgery contain only inpatient medical records and do not include any postoperative outpatient notes.

Approximately four and a half years later, on November 6, 2003, plaintiff was again admitted to hospital by Dr. Middleton with a diagnosis of "mechanical instability, L4-5, chronic neck and back pain" (Tr. 172).   Plaintiff underwent surgery described as "L4 lumbar laminectomy, placement of right sided interbody fusion cage, and placement of pedical rods, L4-5 bilaterally"(Tr. 172).  The medical records proffered with respect to this hospital admission and surgery contain only an operative report and do not include any postoperative outpatient notes.

Almost two years later, on October 12, 2005, plaintiff again presented to Dr. Middleton with complaints of neck pain radiating into the right shoulder and arm with numbness (Tr. 176).  An MRI done on that date indicated "mild to moderate spinal stenosis at C4-5 and C6-7 [and] probable postoperative changes at C5-6 with moderate disc space narrowing at this level and fatty infiltration of the vertebralbodies" (Tr. 179). This MRI also indicated that there was "no deformity of the cervical spinal cord . . .[and [n]o intrinsic lesions of the cervical spinal cord or visualized portion of the posterior fossa" (Tr. 179).  Dr. Middleton's assessment included not only neck pain but cervical Spondylosis, all of which required, in Dr. Middleton's opinion, "No Current Treatments"

---

[1] According to the medical records, this surgery entailed an anterior cervical disectomy at C5-6, with the disc being replaced with "banked bone" which was "cut and shaped" to fit. (Tr. 166).

(Tr. 177-178). Dr. Middleton expressly found that plaintiff's cervical spine possessed normal range of motion and there were no abnormalities noted with respect to plaintiff's lumbar spine (Tr. 177).

On February 6, 2007, plaintiff presented to Dr. James Crumb at Coastal Neurological Institute complaining of "[p]eriodic increase in symptoms and pain level" which is also described as "tolerable" (Tr. 122). According to Dr. Crumb's notes, plaintiff reported that his earlier complaint of muscle spasms "is well controlled on current medication and exercise regime" but that the "bilateral limb pain" associated with his degenerative cervical disc disease is "not well controlled on current medication and exercise regime" (Tr. 224). Consequently, Dr. Crumb changed plaintiff's medication (Tr. 224) to Zanaflex, Lyrica and Lortab. In addition, Dr, Crumb noted "no abnormalities" with respect to plaintiff's gait and cervical spine (Tr. 223) and that, although he experienced some "muscle spasm" on palpation of the lumbar spine, plaintiff had "full range of motion: flexion, extension, rotation and lateral bend" (Tr. 224).

On February 12, 2007, plaintiff returned to Dr. Crumb for his follow-up visit and complained of low back pain (Tr. 216). Treatment records reflect that his symptoms were "well controlled with prescribed medication [with] no significant side effects on prescribed medication" (Tr. 216). The treatment notes also indicate that plaintiff was able to engage in daily activities and his pain index level at that time was "5" out of "10" (with "10" being the worst pain possible) (Tr. 216). An MRI taken on February 15, 2007, revealed a minimal annular tear and disc bulge at L3-L4 without evidence of stenosis and a mild disc bulge at L4-L5 with minimal left foraminal encroachment (Tr. 215). A nerve

conduction study conducted on February 12, 2007, revealed that "[a]ll nerves tested were within normal limits" (Tr. 219).

On March 7, 2007, plaintiff followed-up again with Dr. Crumb with no new complaints and again reported that his symptoms were "well controlled with prescribed medication" and that with his medication he could do such things as clean house and work while he could also engage in a number of personal care activities without medication, such as shaving and brushing his hair and teeth, taking a bath or shower, walking in the house and feeding himself (Tr. 212). Dr. Crumb did not assess any functional limitations.

A follow-up appointment with Dr. Crumb on April 4, 2007, revealed that plaintiff's symptoms were well controlled with prescribed medication, he had no significant side effects, he was able to engage in normal self-care activities, and his treatment now included physical therapy in the form of electrical nerve stimulation (Tr. 209). Dr. Crumb also prescribed a series of three epidural injections (Tr. 210). Dr. Crumb did not, however, assess any functional limitations.

On May 2, 2007, plaintiff presented to Dr. Crumb again with complaints of low back pain and neck pain which were nonetheless described as "tolerable" and "not changed" or new in character (Tr. 287). Plaintiff reported that his pain was not adequately controlled with prescribed medication (Tr. 287) but that he had good results

from his first epidural injection (Tr. 288).[2]  Dr. Crumb's examination revealed normal muscle tone and no abnormalities in the cervical or lumbar spines (Tr. 288).  Dr. Crumb noted that he would change plaintiff's medication and recheck plaintiff at an appropriate interval (Tr.289).

A physical residual capacity assessment ("RFC") prepared by the Disability Determination Service ("DDS") and dated May 5, 2007, reported a primary diagnosis of lumbar degenerative disc disease and a secondary diagnosis of cervical spinal stenosis (Tr. 225).  This RFC indicated that plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk 6 hours in an 8-hour workday with normal breaks; sit 6 hours in an 8-hour workday with normal breaks; and had no limitations on his ability to push and pull, including operation of hand and/or foot controls (Tr. 226).  The RFC also indicated that plaintiff could frequently climb ramps and/or stairs but could only occasionally stoop, kneel, crouch and crawl (Tr. 227).  Plaintiff was only prohibited from climbing ladders, ropes and scaffolds (Tr. 227).  No manipulative, visual or communicative limitations were indicated (Tr. 228-229).

At his follow-up visit to Dr. Crumb on June 1, 2007, plaintiff again reported that his symptoms were well controlled and his pain was adequately controlled with the prescribed medications and there was no new joint or muscle pain (Tr. 282).  The treatment notes also indicate that plaintiff was able to engage in daily normal self-care

---

[2] Plaintiff underwent his first epidural injection procedure at Springhill Medical Center on April 30, 2007 (Tr. 328).  His second and third epidural injections were also given at Springhill Medical Center on June 18, 2007 (Tr. 327) and November 12, 2007 (Tr. 326), respectively.

activities and his pain index level at that time was "6" (Tr. 282). Dr. Crum set plaintiff up for a second epidural injection (Tr. 283).

At his follow-up visit on August 30, 2007, plaintiff again reported that his pain was "tolerable" and that his symptoms were well controlled and his pain adequately controlled with the prescribed medications and there was no new joint or muscle pain (Tr. 272). The treatment notes also indicate that plaintiff was using hot packs and electrical nerve stimulation and was able to engage in normal self-care activities (Tr. 272).

Plaintiff next relies on his November 29, 2007, office visit to Dr. Crumb in which he reported new joint/muscle pain which he described as "intolerable" and which was not adequately controlled by the prescribed medications (Tr. 267). Dr. Crumb reported that plaintiff's low back pain and worsening bilateral leg pain was of sudden onset "after a drive 1 month ago" and that "conservative measures of relative rest, superficial modalities (ice, heat) and antiinflammatory medications have failed to eliminate pain" (Tr. 269). Plaintiff was referred to a new lumbar spine MRI and an epidural injection as well as a new medication, Topomax (Tr. 269).[3]

On December 10, 2007, plaintiff again presented top Dr. Crumb and now reported that his symptoms were well controlled on his current medication and exercise regime (Tr. 259-260). Nerve conduction studies conducted at that time revealed a right peroneal neuropathy but all other nerves tested were within normal limits (Tr. 261).

---

[3] As stated in note 2, *supra*, Plaintiff underwent this third epidural injection procedure at Springhill Medical Center on November 12, 2007 (Tr. 326).

Consequently, Dr. Crumb determined that he would continue the current treatment and recheck the plaintiff at appropriate intervals (Tr. 260).

On both January 15, 2008 and February 14, 2008, plaintiff again reported to Dr. Crumb that his symptoms were well controlled on his current medication and exercise regime and the current treatment was continued with instructions to return in four weeks (Tr. 249-51, 244-46). No functional limitations were assessed by Dr. Crumb during either of these office visits.

Plaintiff's office visit on March 18, 2008, was summarized by Dr. Crumb as follows:

> Vernon Williams reports that symptoms have worsened, pain level is intolerable, reports taking all medications prescribed, reports pain and other symptoms well controlled with prescribed treatment, denies new medical problems, new family medical history, hospital or emergency visits or recent diagnostic tests. Denies side effects of prescribed treatment, and reports taking prescribed medication today. Does not have any new problem to discuss with the doctor.

(Tr. 241). Plaintiff reported that, at the time of this visit, he was experiencing an "aching" type of pain that he rated at a level of "6" (Tr. 242). Dr. Crumb further reported that plaintiff exercised 1-2 times each week by walking, complained of leg cramps with exertion, and complained of upper and lower extremity pain with tingling and numbness, but that plaintiff's posture, gait and muscle strength in the upper and lower extremities was normal (Tr. 441-43). Dr. Crumb concluded that the Lortab's effectiveness had reduced to less than 2 hours' worth of relief because of plaintiff's long-term narcotic use and, consequently, he would switch plaintiff to Percocet and add Oxycontin but counseled plaintiff on managing his narcotic medication (Tr. 443).

8

Plaintiff's follow-up visit on April 15, 2008, was summarized by Dr. Crumb as follows:

> This is a 42 years old male who presents with Cervical Spine Pain. The patient complains of diffuse neck pain, right shoulder pain, and left shoulder pain, but denies right arm pain, left arm pain, right hand pain, left hand pain, pain between shoulders, lower back pain, radical pattern, recent injury, numbness, weakness and incontinence. The pattern is constant. . . .
>
> Vernon Williams reports that his low back [pain] increased on Friday while having sex. Reports sudden onset of pain, persistent since then. Denies diurnal variation to pain. Reports pain is sharp. Denies neurological complaints to pain.

(Tr. 238). Plaintiff reported that, at the time of this visit, he was experiencing an "aching" type of pain that he rated at a level of "5" (Tr. 239). Dr. Crumb again found that plaintiff's posture, gait and muscle strength was normal but that he was experiencing a moderate restriction in his lumbar spinal range of motion (Tr. 240). Dr. Crumb concluded that plaintiff's acute low back pain simply required observation and he therefore continued plaintiff of the same medication. (Tr. 240).

On his follow-up visit on May 23, 2008, plaintiff saw Dr. Edward M. Schnitzer and complained of back pain at a level of "9" (Tr. 303). The plaintiff reported that, 7-8 days prior to this office visit, he bend over to pick up his shoes and felt a thump in his back and he needed to take more Percocet than usual as the pain had worsened (Tr. 303). Dr. Schnitzer noted that plaintiff's posture gait and muscle strength were all normal and that he had no paraspinal muscle spasms (Tr. 303). Dr. Schnitzer concluded that plaintiff was suffering from lumbar radiculitis and prescribed an antiinflammatory (Medrol) and heat/ice treatments in addition to the medications plaintiff was already taking and advised

plaintiff to continue his home exercise program (Tr. 305).  Plaintiff was also told to follow-up with Dr. Crumb the following week (Tr. 305).

On May 26, 2008, plaintiff went to the emergency room at Springhill Medical Center complaining about "increased spasmodic pain on the right side of his back beginning about I week ago" (Tr. 320).  Plaintiff's history of chronic back pain and degenerative disc disease was noted as was his desire for another epidural injection and his statement that he ran out of his routine pain medications including OxyContin and Percocet earlier that day (Tr. 320-21).[4]  Plaintiff was treated with IM Dilaudid and Norflex and told to follow up with hi pain management physician the next day (Tr. 321).  The medical records indicate that Dr. Crumb subsequently referred plaintiff for an epidural injection on May 27, 2008 at Springhill Medical Center (Tr. 313).

Plaintiff does not refer to any subsequent medical records until those documenting his follow-up visit to Dr. Crumb on September 10, 2008, in which Dr. Crumb summarizes plaintiff's presenting illness as:

> Pt. reports that pain became quite severe with radiation down both legs and up into his head.  Pt. reports that he overtook his pain medications and wound up in the E.R.  Pt. reports that his regular pain medication did not work, but tried Lyrica, which did help his leg pain.  Wants something changed with his medication so it wouldn't have to go through this again.

(Tr. 299).  Dr. Crumb addressed plaintiff's complaint of leg pains at this office visit by changing plaintiff's medications to include a Lyrica prescription (Tr. 301).  Dr. Crumb

---

[4] Plaintiff advised the Emergency Room physician that he had contacted his chronic pain management physician during the week and requested an epidural but was told he was not a candidate at this point (Tr. 320).  The Emergency Room physician advised plaintiff that such a procedure was not performed in the Emergency Room (Tr. 321).

also noted that the symptoms associated with plaintiff's prior complaints of lumbar radiculitis, acute low back pain, muscle spasms and a degenerative cervical disc were all well controlled on current medication and exercise regime and therefore such was continued (Tr. 301).[5]

At his follow-up visit on October 9, 2008, plaintiff reported that his pain level is tolerable, all of his symptoms were well controlled on his current medication and exercise regime and he experienced no side effects from the prescribed medication (Tr. 291, 293). Consequently, Dr. Crumb continued plaintiff's current treatment and instructed plaintiff to return in four weeks (Tr. 293-94).

On February 19, 2009, Dr. Crumb completed a Physical Capacities Evaluation as well as a clinical assessment of pain on the plaintiff (Tr. 234-35). Dr. Crumb indicated that the plaintiff, in an 8-hour workday, could sit, stand and walk four hours in increments of no more than one hour at a time (Tr. 234). Dr. Crumb also indicated that plaintiff could frequently lift and carry up to 10 pounds, occasionally lift and carry up to 20 pounds but should never lift or carry more than 20 pounds (Tr. 234). Dr. Crumb indicated that plaintiff could use either of his hands for repetitive actions such as grasping and pushing and pulling of arm controls but could only use his left hand for repetitive fine manipulations (Tr. 234). Dr. Crumb also indicated that plaintiff was capable of occasionally bending, squatting, crawling, climbing and reaching (Tr. 234). Dr. Crumb

---

[5] Although not mentioned in the treatment records of plaintiff's office visit with Dr. Crumb on September 10, 2008, plaintiff was referred for another epidural injection procedure at Springhill Medical Center which was performed on September 29, 2008 (Tr. 311).

imposed no restrictions on activities involving unprotected heights, being around moving machinery, exposure to marked changes in temperature and humidity, driving automotive equipment or exposure to dust, fumes and gases (Tr. 234). Dr. Crumb, in the Clinical Assessment of Pain he completed, confirmed that plaintiff does "have an underlying medical condition consistent with the pain he … experiences" (Tr. 236). However, Dr. Crumb also indicated that **only "without medication"** was plaintiff's pain present to the extent that it would be "distracting to adequate performance of daily activities or work" (Tr. 235). Dr. Crumb also indicated that physical activity, such as walking, standing, bending, stooping and moving of extremities, would **only** increase plaintiff's pain to a degree that it would cause distraction from performing a task or total abandonment of that task if he did not take his pain medication (Tr. 235, emphasis added). In addition, Dr. Crumb concluded that, although plaintiff's prescribed medications may present some side effects, they would **not** present "to such a degree as to create serious problems in most instances. (Tr. 236).

B. Other Evidence.

In addition to the aforementioned medical records, plaintiff completed a Pain Questionnaire on May 5, 2007, and therein attested that he had constant pain (Tr. 128) but that his prescribed medication relieved his pain (Tr. 129). Plaintiff testified that there were days when he would feel fine but there were also about seven days a month when he did not leave his room (Tr. 35). He testified that he had been to the emergency room four or five times because of the pain (Tr. 37). He also testified that his medication helped, except when he had an "episode" (Tr. 39). He testified that his medications caused

constipation, a tendency to be lightheaded and slows down his thinking process (Tr. 40, 45).  Plaintiff testified that, even on his "good days" he had to recline or lie down for about an hour or two (Tr. 44-45).

   IV.  <u>Conclusion of Law</u>.

        A.     <u>Standard of Review</u>.

        In reviewing claims brought under the Act, this Court's role is a limited one. Specifically, the Court's review is limited to determining: 1) whether the decision is supported by substantial evidence, and 2) whether the correct legal standards were applied. <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990).  Thus, a court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.   <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986).  Rather, the Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991); <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir.  1983) (finding that substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[ ]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986).

        B.     <u>Applicable Law</u>.

        An individual who applies for Social Security disability benefits or supplemental security income must prove their disability.  *See* 20 C.F.R. § 404.1512; 20 C.F.R. §

416.912.  Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).   The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven their disability. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  At the first step, the claimant must prove that he or she has not engaged in substantial gainful activity.  At the second step, the claimant must prove that he or she has a severe impairment or combination of impairments.  If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If, however,  the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove inability to perform their past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history.  Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity and age, education, and work history.  Sryock v. Heckler, 764 F.2d 834 (11th

14

Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant

can perform, the claimant must prove inability to perform those jobs in order to be found

disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th  Cir. 1999); *see also*  Hale v.

Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (*citing* Francis v. Heckler, 749 F.2d 1562,

1564 (11th Cir. 1985)).

      C.    Discussion.

**The ALJ properly considered Plaintiff's Subjective Pain Complaints.**

The Eleventh Circuit has established a three part "pain standard" that applies when

a claimant attempts to establish disability through his own testimony about pain or other

subjective symptoms:

> The pain standard requires (1) evidence of an underlying medical condition
> and either (2) objective medical evidence that confirms the severity of the
> alleged pain arising from that condition or (3) that the objectively
> determined medical condition is of such a severity that it can be reasonably
> expected to give rise to the alleged pain.

Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing* Mason v. Bowen, 791 F.2d

1460, 1462 (11th Cir. 1986); Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986).

Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  *See also*, King v. Barnhart, 324

F.Supp.2d 1294, 1299 (N.D. Ala. 2004)("[I]f a claimant testifies to disabling pain and

satisfies the three part pain standard, he must be found disabled unless that testimony is

properly discredited.").

The Eleventh Circuit has also held that the determination of whether objective

medical impairments could reasonably be expected to produce the pain complained of is

a factual question to be answered by the Commissioner and, therefore, subject only to a

limited review in the courts to ensure that the finding is supported by substantial evidence. Hand v. Heckler, 761 F.2d 1545, 1548-49 (11th Cir. 1985)("Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce such pain. This determination is a question of fact which, like all factual findings by the Secretary, is subject only to limited review in the courts to ensure that the finding is supported by substantial evidence."), *vacated for rehearing* en banc, 774 F.2d 428 (1985), *reinstated* sub nom Hand v. Bowen, 793 F.2d 275 (11th Cir. 1986). It is, moreover, the duty of the Commissioner, not the Courts, to determine the credibility of a claimant's testimony. Cartwright v. Heckler, 735 F.2d 1289, 1290 (11th Cir. 1984)("Credibility determinations are for the Secretary, not the courts.").

In her decision, the ALJ thoroughly reviewed the evidence, stated she considered plaintiff's subjective complaints in accordance with 20 C.F.R. § 404.1529 and Social Security Ruling (SSR) 96-7p, and determined plaintiff's subjective complaints were not entirely credible (Tr. 17-18). The ALJ's analysis of plaintiff's subjective complaints of pain is precisely that required under Holt. Although the ALJ did not directly refer to the language of the three-part test in Holt, her findings and discussion clearly indicate the standard was applied.

The Eleventh Circuit has approved an ALJ's reference to, and application of, the standard set out in the regulations, because the regulations contain the same language regarding subjective pain testimony that the Court interpreted when initially establishing its three-part standard. *See* Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002). An ALJ's determination as to credibility will not be overturned if, reviewing the

entirety of the record, there is substantial evidence supporting a finding of non-credibility.  Foote, 67 F.3d  at 1562. "[T]he decision concerning the Plaintiff's credibility is a function solely within the control of the Commissioner and not the courts." Sellers v. Barnhart, 246 F. Supp. 2d 1201, 1213 (M.D. Ala. 2002). The assessment of a claimant's credibility about pain and its effect on his ability to function must be based on consideration of all the evidence.  *See* 20 C.F.R. § 404.1529; SSR 96-7p.  Moreover, "the severity of a medically ascertained impairment must be measured in terms of its effect upon ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality ." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986); 20 C.F.R. § 404.1529(a) (we will determine the extent to which your alleged functional limitations and restrictions due to pain can reasonably be accepted as consistent with the medical signs and laboratory findings).

Here, the ALJ found that although plaintiff's underlying medical condition could reasonably be expected to produce the symptoms alleged, his statements concerning the intensity and limiting effects of his symptoms were not credible (Tr. 18). To the extent plaintiff argues the ALJ did not consider the fact that he consistently sought treatment for pain, his argument is unavailing and must fail.   It is evident that plaintiff has some pain. The ALJ specifically noted plaintiff  sought treatment for pain due to degenerative disc disease consistently since his alleged onset date in February 2007, and that plaintiff had seen Dr. Crum on 18 occasions between February 2007, and October 2008 (Tr. 18). While consistent treatment for pain may support plaintiff's pain allegation, it is not

conclusive evidence of pain so disabling as to preclude performance of all substantial gainful activity.

In making her assessment of plaintiff's credibility about pain and its effect on his ability to function, the ALJ based her assessment on consideration of all the evidence of record, not just the fact that plaintiff sought treatment. *See* 20 C.F.R. § 404.1529; SSR 96-7p. In the instant case, after considering all of the evidence, the ALJ reasonably concluded plaintiff's subjective complaints were not entirely credible. The longitudinal medical record reflects that plaintiff often reported his symptoms were well controlled with his current medication (Tr. 209, 216, 238, 241, 244, 251, 293, 301, 306), and he testified that his medication helped, except when he had an "episode" (Tr. 39). *See* <u>Dawkins v. Bowen</u>, 848 F.2d 1211, 1213 (11th Cir. 1988) (a medical condition that can reasonably be remedied by medication is not disabling). Notably, Dr. Crum never opined that plaintiff was disabled, and implicitly stated that with medication, plaintiff's pain would not be so distracting as to prevent the adequate performance of daily work or activities (Tr. 234-35). *See* <u>Cartwright</u>, 735 F.2d at 1290 (significant that no physician determined that claimant was disabled).

The objective medical evidence further supports the ALJ's determination that plaintiff was not totally credible regarding his allegations of severe disabling pain. Physical examinations consistently revealed normal posture and gait, normal strength in the upper and lower extremities, and no evidence of sensory loss (Tr. 238, 241, 249, 308); nerve conduction studies were basically normal except for the right peroneal motor response (Tr. 219, 261); and MRIs revealed only mild to moderate cervical stenosis, no

18

evidence of lumbar stenosis, and only minimal foraminal encroachment (Tr. 179, 215).

Despite plaintiff's contentions to the contrary, the ALJ did not err in considering his daily activities in determining that his subjective complaints of pain were not credible. The ALJ described Plaintiff's daily activities and intimated that his daily activities were inconsistent with his self reported disabling functional limitations (Tr. 19-20).  It is true that participation in everyday activities of short duration, such as housework, does not disqualify a claimant from disability. Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997). The ALJ may, however, consider a claimant's daily activities when evaluating subjective complaints of disabling pain. *See* Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996) (daily activities support ALJ's determination to discredit testimony);  20 C.F.R. § 404.1529 (we consider daily activities); SSR 96-7p (we consider a claimant's daily activities in assessing the credibility of their statements).  In this case, the ALJ properly took into consideration Plaintiff's daily activities when she assessed his credibility.

In her decision, the ALJ also took into account Plaintiff's testimony that he spent 15 hours per week, most of it phone conversations, acting as a general contractor on a building project on a lot that he owned (Tr. 50-51). The ALJ stated this "business venture is a significant indication that the claimant is capable of physical and mental persistence in spite of the 24 hour constant pain that he alleges" (Tr. 24). Plaintiff alleges the ALJ mischaracterized his involvement in the project since he never testified he was engaged in any of the activities identified by the ALJ (Plaintiff's brief at 15).  Although

plaintiff did not testify that he engaged in the specific activities identified by the ALJ, he did testify that he put in about 15 hours every week being involved in the project, most of it phone conversations (Tr. 51). Plaintiff's testimony does substantiate the ALJ's statement that "this business venture is a significant indication that the claimant is capable of physical and mental persistence " and was, therefore, a fair characterization of plaintiff's testimony.   Moreover, plaintiff's involvement in the building project was but one of several factors relied on by the ALJ in determining Plaintiff's testimony regarding his subjective allegations of pain were not credible.

Inconsistencies in the record further undermine Plaintiff's credibility.  For example, plaintiff testified that even on "good days" he had to recline or lie down for about an hour or two (Tr. 44-45), however, there is no record that plaintiff ever reported to any physician that he needed to recline or lie down for about an hour or two even on his good days. *See,* Harris v. Barnhart, 1356 F.3d 926, 930 (8th Cir. 2004) (the need to lie down is a medical question that requires medical evidence); Patrick v. Barnhart, 323 F.3d 592, 593 (8th Cir. 2003) (ALJ properly discounted claimant's need to lie down based on lack of medical evidence to support her claim); Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir. 1991) (claimant's allegation that he had to lie down several times a day was discounted because no physician suggested that the claimant's condition required such reclining).

Plaintiff also testified that his medication made him light headed and made it difficult to think (Tr. 40, 46). As the ALJ noted, plaintiff never reported these side effects

to his physician (Tr. 19). To the contrary, the record specifically reflects that on numerous occasions plaintiff reported that he did not experience any side effects from his prescribed medications (Tr. 209, 238, 241, 244, 251, 306). *See* Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 205) (ALJ properly discounted Plaintiff's credibility because of inconsistencies in the record as a whole); McCray v. Massanari, 175 F. Supp. 2d 1329, 1338 (M.D. Ala. 2001) (ALJ is entitled to consider inconsistencies between a claimant's testimony and evidence of record).  The ALJ offered clear and cogent reasons for her credibility determination, and as such, did not commit error in discounting plaintiff's subjective complaints. See Petteway v. Comm'r of Soc. Sec., 357 F. App'x 287, 289 (11th Cir. 2009) (because the ALJ offered clear and cogent reasons for his credibility determination, he did not commit reversible error in discounting claimant's subjective complaints of pain).  A clearly articulated credibility determination  by the ALJ with substantial supporting evidence in the record will not disturbed.  Foote, 67 F.3d at 1562.

V.     Conclusion.

For the reasons stated above, it is ORDERED that the decision of the Commissioner of Social Security denying plaintiff's benefits be and is hereby AFFIRMED.

Done this  20th  day of September 2010.


/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**